**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | | |
|---|---|---|
| ARCHBISHOP EDWIN F. O'BRIEN, | * | |
| ARCHBISHOP OF BALTIMORE AND | * | |
| HIS SUCCESSORS IN OFFICE, A | | |
| CORPORATION SOLE, | * | |
| 320 Cathedral Street | | |
| Baltimore, MD 21201 | * | |
| | * | |
| *and* | | |
| | * | |
| ST. BRIGID'S ROMAN CATHOLIC | * | **Case No. 10-760** |
| CONGREGATION, INCORPORATED | | |
| 900 S. East Avenue | * | |
| Baltimore, MD 21224 | | |
| | * | |
| *and* | * | |
| | | |
| GREATER BALTIMORE CENTER FOR | * | |
| PREGNANCY CONCERNS, INC. | * | |
| 2418 St. Paul Street | | |
| Baltimore, MD 21218 | * | |
| | * | |
| Plaintiffs, | * | |
| | | |
| v. | * | |
| | * | |
| MAYOR AND CITY COUNCIL OF | * | |
| BALTIMORE | * | |
| | | |
| *and* | * | |

STEPHANIE RAWLINGS-BLAKE,          *
Mayor of Baltimore, in her Official
Capacity                           *

                                   *
*and*
                                   *

OLIVIA FARROW, ESQ., Acting        *
Baltimore City Health Commissioner, in
her Official Capacity              *

                                   *
*and*
                                   *

BALTIMORE CITY HEALTH              *
DEPARTMENT
                                   *

     Serve on:                     *
          George A. Nilson, Esq.   *
          City Solicitor
          City Hall, Room 101      *
          100 N. Holliday Street   *
          Baltimore, MD  21202
                                   *

                                   *

     Defendants.                   *

                                   *

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, Archbishop Edwin F. O'Brien, Roman Catholic Archbishop of Baltimore, and his successors in office, a corporation sole ("Archbishop O'Brien"), St. Brigid's Roman Catholic Congregation, Incorporated, ("St. Brigid's"), and the Greater Baltimore Center for Pregnancy Concerns, Inc., ("the Center"), by and through their undersigned attorneys, hereby sue Defendants, the Mayor and City Council of Baltimore, Stephanie Rawlings-Blake, Mayor of Baltimore, in her official capacity, Olivia Farrow, Esq., acting Baltimore City Health Commissioner, in her official capacity, and the Baltimore City Health Department, and for their Complaint state as follows:

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Ordinance 09-252 (the "Ordinance"), which added Sections 3-501 *et seq.* to the Baltimore City Health Code and Sections 40-14(e)(7) and 41-14(6) to the Baltimore City Code.  A copy of the Ordinance is attached hereto as Exhibit A.

2.      The Ordinance violates the Center's constitutional rights to free speech and free exercise of religion.  In pursuit of its charitable and religious mission, the Center provides a range of services, all for free, to pregnant women.  Based on moral and religious beliefs, the Center does not provide or refer for abortions.  The Ordinance, by its own express terms, applies only to pro-life pregnancy centers such as the Center that do not provide or refer for abortions,

and thereby targets for speech regulation only one side of a contentious public, political debate. The Supreme Court has repeatedly ruled that such viewpoint discrimination violates the First Amendment, stating: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

3.      Not only does the Ordinance single out pro-life centers for its requirements under threat of criminal penalties, the Ordinance regulates communications at the Center that are personal, moral, religious, and political.  The speech between a pregnant woman and someone at the Center whom the woman seeks out for free support is not commercial but rather deeply personal and motivated on both sides by a range of personal, moral, and religious motivations. Into this relationship, the Ordinance injects a government-mandated "disclaimer."  However, "[t]he First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it. . . Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*,  487 U.S. 781, 791 (1988).

4.      As if such viewpoint-based, government-compelled speech were not bad enough, the government-mandated "disclaimer" forces the Center to make a statement that is simply untrue.  The Ordinance <u>requires</u> the Center to post a sign saying that it does not provide birth-control services.  In fact, the Center does provide birth-control services in the form of education about abstinence and natural family planning.  Abstinence and natural family planning are

medically recognized means of birth control.  Indeed, in a section of its website describing "Types of Birth Control," the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention lists both abstinence and natural family planning, and calls continuous abstinence "the only 100% effective way to prevent pregnancy." *See* http://www.cdc.gov/reproductivehealth/unintendedpregnancy/contraception.htm.

5.     The Ordinance also runs directly counter to the express protection provided under Maryland law for its citizens to refuse to provide or refer for abortions.  Pursuant to Maryland's Conscience Clause, Md. Code Ann., Health-General § 20-214, a "person may not be required to … refer for any medical procedure that results in … termination of pregnancy," and the refusal to provide abortion referrals "may not be a basis for civil liability to another person or disciplinary or other recriminatory action."  The Center, which has provided thousands of women with material and moral support, should be commended, not recriminated against through the Ordinance in violation of Maryland state law.

6.     In sum, the First Amendment prohibits Baltimore City from singling out one side in an important public issue and requiring it to post the government's message, particularly when that message is simply untrue.

7.     Accordingly, preliminary and permanent injunctive and declaratory relief are warranted.

# 396923
012811-0001

## I.      JURISDICTION AND VENUE

8.      The Court has jurisdiction over Counts I, II, and III pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 1983.   The Court has supplemental jurisdiction over Count IV.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court is authorized to issue permanent injunctive relief pursuant to Fed. R. Civ. P. 65, and to award Plaintiffs attorney's fees and costs pursuant to 28 U.S.C. § 1988.

9.      Venue is proper in the District of Maryland, Northern Division, pursuant to 28 U.S.C. § 1391(b).

## II.      PARTIES

10.      The Center is a Maryland non-profit 501(c)(3) corporation that provides pregnancy related services at two locations in Baltimore City, Maryland, at 2418 St. Paul Street and at 900 S. East Avenue.

11.      The Center seeks to protect the physical, emotional and spiritual lives of women and their unborn children, by providing pregnant women services including material assistance, pregnancy testing, sonograms, prenatal vitamins, bible study, an abstinence program, housing and adoption referrals, and mentoring.

12.      Founded in 1980, the Center provides services to over 1,000 women per year.  The Center does not charge women for any its services.

13.      The Center does not provide or refer for abortion.

14.     The Center does provide information on abstinence and natural family planning, which are recognized forms of birth control.  The Center does not provide or refer for any other forms of birth control.

15.     The Center has provided information and services to pregnant women in Baltimore since 1980, and expects and intends to continue to do so in the future.

16.     Plaintiff Archbishop O'Brien, a corporation sole under Maryland law and a non-profit 501(c)(3) corporation, is the title holder of record of the property located at 900 S. East Avenue, Baltimore, Maryland.  Archbishop O'Brien holds title in trust for St. Brigid's.

17.     Plaintiff St. Brigid's is a non-profit 501(c)(3) organized as a religious corporation under Maryland law.  St. Brigid's operates a Roman Catholic Parish located at 900 S. East Avenue.  St. Brigid's is the beneficial owner of the property at 900 S. East Avenue.

18.     Plaintiffs St. Brigid's and Archbishop O'Brien provide space at 900 S. East Avenue to the Center for the Center's operation of a pregnancy center.

19.     Defendant Mayor and City Council of Baltimore is a municipal corporation located in this federal district.

20.     Defendant Stephanie Rawlings-Blake is Mayor of Baltimore and is responsible for the execution of all city ordinances and general supervision of all municipal officers and agencies under Article IV, section 4 of the Baltimore City Charter.  Mayor Rawlings-Blake is sued in her official capacity.

# 396923
012811-0001

21.     Defendant Olivia Farrow is Interim Health Commissioner for the City of Baltimore.  Under Article VII, sections 54 and 55 of the City Charter and §2-104 of the Baltimore City Health Code, Ms. Farrow is the head of the Baltimore City Department of Health and is charged with enforcing Baltimore's health laws and regulations.  Ms. Farrow is sued in her official capacity.

22.     Defendant Baltimore City Health Department was established by Article VII, §54 of the Baltimore City Charter and is charged with executing Baltimore's health laws and regulations.

### III.     GENERAL ALLEGATIONS

23.     On or about November 23, 2009, the Baltimore City Council passed Bill 09-0406, enacted as Ordinance 09-252, to create special speech rules for "Limited Service Pregnancy Centers."  On or about December 4, 2009, then-Mayor Sheila Dixon signed the bill into law. The Ordinance took effect on or about January 4, 2009.

24.     The Ordinance defines a "Limited Service Pregnancy Center" as "any person whose primary purpose is to provide pregnancy-related services" but who "does not provide or refer for abortions; or nondirective and comprehensive birth control services."  Exhibit A (internal citations omitted).  The definition of Limited Service Pregnancy Center expressly includes persons who offer such services and information for free.

25.     The Center has as its primary purpose providing pregnancy-related services and provides information about pregnancy-related services as a free service.

26.     The Center does not refer for or provide abortions.  The Center does not refer for, or provide information regarding birth control, other than natural family planning and abstinence.

27.     The Ordinance requires Limited Service Pregnancy Centers to provide its "clients and potential clients" with a "disclaimer" "conspicuously posted in the center's waiting room or other area where individuals await service."  The disclaimer must state that the center "does not provide or make referral for abortion or birth control services."  The disclaimer must be posted in English and in Spanish.

28.     If the Health Commissioner learns "that a pregnancy center is in violation" of the posting requirements of the Ordinance, the Health Commissioner "shall issue a written notice ordering the center to correct the violation within 10 days of the notice."

29.     Failure to comply with the written order is punishable by a series of civil and criminal penalties.

30.     Failure to obey the Health Commissioner's order requiring placement of the disclaimer is a criminal misdemeanor under Baltimore City Health Code § 2-211.  Upon conviction, the defendant is subject to a fine of up to $200 plus $50 for each day that the offense continues.  Baltimore City Health Code § 2-213.

31.     Failure to place the disclaimer can additionally be punished through a civil citation with a fine of $150.  Baltimore City Code, Art. 1, Subtitles 40 and 41.  A defendant charged with a citation under Subtitle 41 may seek to stand trial, in which he must "enter a plea of 'guilty'

or 'not guilty.'"  Art. 1, § 41-11(d).  If the defendant fails to challenge the citation and fails to pay the citation, the defendant may be found liable for an additional default penalty of $450.00. See Baltimore City Code, Art. 1, § 41-10.  If a defendant fails to pay the penalty imposed by the district court, the court may hold the defendant in contempt of court.  Art. 1, § 41-12.

32.     The Ordinance expressly states that the City can pursue citations in addition to "any other civil or criminal remedy or enforcement action authorized by law."

33.     Organizations fitting the statutory definition of Limited Service Pregnancy Centers have operated in Baltimore for nearly 30 years.

34.     The Ordinance does not apply to all speakers or organizations providing information about pregnancy services or pregnancy options.

35.     A speaker or organization that provides referrals for abortions but does not provide referral information about childbirth is not covered by the Ordinance.

36.     A speaker or organization that provides referrals for abortion but does not provide referrals for adoption is not covered by the Ordinance.

37.     The Ordinance requires only speakers who refuse to refer for abortion to provide government-drafted "disclaimers" before speaking about pregnancy.

38.     The Ordinance does not require centers performing or referring for abortion to post any kind of disclaimer.

39.     The services and assistance provided and/or facilitated by the Center is highly dependent on the development of personal relationships with the women it serves.  Forcing the

Center to begin these sensitive conversations with government-mandated disclaimers interferes with the Center's discussions with these women.

40.    By requiring a disclaimer that the Center does not provide or refer for abortions, the Ordinance compels Plaintiffs to deliver the implied message that these services are available elsewhere and should be considered.   The Ordinance requires Plaintiffs to legitimize such services in violation of Plaintiffs' moral, ideological, political, and religious beliefs.

41.    Additionally, although the Center provides information and education on natural family planning and abstinence, the Ordinance requires the Center to post a disclaimer that it does not offer birth-control services.   The Center would thus be compelled to make a false statement and/or to deliver the implied message that natural family planning and abstinence are not legitimate "birth-control services."

42.    The existence of the Ordinance imposes a chill on Plaintiffs' speech.

43.    Plaintiffs' opposition to abortion arises from sincerely held religious beliefs. Plaintiffs could not agree to refer or provide for abortions without violating these sincerely held religious beliefs.

44.    Plaintiffs' providing space for and the Center's operation of the Center, and their charitable outreach to and personal moral discussion with pregnant women in need, are matters of religious exercise and based in their sincerely held religious beliefs.

45.    By depriving Plaintiffs of their right to speak about pregnancy and family planning matters on their own terms, and by subjecting Plaintiffs to regulations and potential fines solely

because of their opposition to abortion, the Ordinance places a substantial burden on Plaintiffs'

religion in violation of the Free Exercise Clause of the First Amendment.

46.     The existence of the Ordinance imposes a chill on Plaintiffs' free exercise of

religion.

47.     Section 20-214(a)(1) of the Health-General Article of the Maryland Code provides

that no person may "be required to perform or participate in, or refer to any source for, any

medical procedure that results in . . . termination of pregnancy."

48.     Section 20-214(a)(2) of the Health-General Article of the Maryland Code provides

that "[t]he refusal of a person to perform or participate in, or refer to a source for, these medical

procedures *may not be a basis for: . . . (ii) disciplinary or other recriminatory action against*

*the person.*"

49.     The Ordinance applies only to persons who refuse to refer or provide for

abortions.  The Ordinance's speech regulations and fines apply only to speakers who refuse to

refer or provide for abortions.

50.     The Ordinance creates a basis for disciplinary and other recriminatory action

against Plaintiffs based on their refusal to perform, participate in, and refer for abortions.

51.     Accordingly, the Ordinance violates Section 20-214 of the Health-General Article

of the Maryland Code.

52.     Enforcement of the Ordinance will irreparably harm Plaintiffs by infringing upon

Plaintiffs' First and Fourteenth Amendment rights to free speech, free exercise, and equal

protection, as well as Plaintiffs' rights under §20-214 of the Health-General Article of the Maryland Code.

53.     Plaintiffs have no adequate remedy at law.

## COUNT I—VIOLATION OF FIRST AMENDMENT (FREE SPEECH/ASSEMBLY) AGAINST ALL DEFENDANTS

54.     Paragraphs 1-53 are incorporated as if fully set forth herein.

55.     The First Amendment to the United States Constitution provides, in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . ."

56.     The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

57.     The Ordinance unconstitutionally restricts Plaintiff's rights of free speech and assembly.

58.     The Ordinance unconstitutionally discriminates against Plaintiffs' speech on the basis of the content and viewpoint of Plaintiffs' speech about abortion.

59.     The Ordinance is an unconstitutional prior restraint, in that the Center must cease speaking with pregnant women unless and until the Center complies with the Ordinance.

60.     The Ordinance is an unconstitutional burden on free association and assembly, in that the Center must cease meeting with pregnant women unless and until the Center complies with the Ordinance.

61.     The Ordinance unconstitutionally compels speech.

62.     The Ordinance does not regulate commercial speech, but rather fully protected speech.   Plaintiffs, charitable non-profit entities, do not charge pregnant women for their services and do not have a profit motive or economic interest in the services provided.

63.     The Ordinance is unconstitutionally and substantially overbroad.

64.     The Ordinance imposes an unconstitutional chill on Plaintiffs' speech and, without declaratory and injunctive relief, will continue to do so.

65.     Plaintiffs have no adequate remedy at law.

66.     Accordingly, the Ordinance violates the First Amendment of the United States Constitution.

## COUNT II—VIOLATION OF FIRST AMENDMENT (FREE EXERCISE) AGAINST ALL DEFENDANTS

67.     Paragraphs 1-66 are incorporated as if fully set forth herein.

68.     The First Amendment to the United States Constitution provides, in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

69.     The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

70.     Based on their sincerely held religious beliefs, Plaintiffs do not refer for or provide abortions.  Based on their sincerely held religious beliefs, Plaintiffs do not refer for, or provide information regarding birth control, other than natural family planning and abstinence.  Based

on Plaintiffs' sincerely held religious beliefs, pregnancy-related services are provided through the Center.

71.     The Ordinance is not neutral and generally applicable and intentionally imposes a substantial burden on Plaintiffs' ability to serve the women of Baltimore pursuant to their sincerely held religious beliefs.

72.     The Ordinance unconstitutionally imposes a substantial burden on Plaintiffs' religion, in that it deprives them of their right to free speech and exposes them to special regulation and fines as a result of their sincerely held religious beliefs.

73.     The Ordinance imposes an unconstitutional chill on Plaintiffs' free exercise of religion and, without declaratory and injunctive relief, will continue to do so.

74.     Plaintiffs have no adequate remedy at law.

75.     Accordingly, the Ordinance violates the First Amendment of the United States Constitution.

### COUNT III—VIOLATION OF FOURTEENTH AMENDMENT (EQUAL PROTECTION) AGAINST ALL DEFENDANTS

76.     Paragraphs 1-75 are incorporated as if fully set forth herein.

77.     Section 1 of the Fourteenth Amendment provides, in relevant part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

78.     The Ordinance purports to regulate the speech and interactions of Plaintiffs solely by virtue of Plaintiffs' refusal to refer for or provide abortions.

79.     The Ordinance subjects Plaintiffs—but not abortion clinics or other facilities that provide or refer for abortions—to severe criminal and financial penalties, interference with free speech, and compelled speech.

80.     The Ordinance imposes a penalty on Plaintiffs—but not abortion clinics or other facilities that provide or refer for abortions— in the form of reduced speech rights and exposure to regulation and fines for Plaintiffs' refusal to provide or refer for abortions.

81.     If Plaintiffs simply agree to refer for abortions and additional methods of birth control, the restrictions of the Ordinance would be lifted.

82.     As such, the Ordinance violates the Fourteenth Amendment guarantees of equal protection.

83.     Plaintiffs have no adequate remedy at law.

84.     The Ordinance imposes an unconstitutional chill on Plaintiffs' speech and Plaintiffs' right to refuse to refer or provide abortions or birth control.  Without declaratory and injunctive relief, the Ordinance will continue to do to impose this chill.

## CLAIM IV - VIOLATION OF MARYLAND CODE, HEALTH –GENERAL § 20-214 (CONSCIENCE CLAUSE) AGAINST ALL DEFENDANTS

85.     Paragraphs 1-85 are incorporated as if fully set forth herein.

86.     The Ordinance imposes severe criminal and financial penalties if a pregnancy center does not refer for abortion and fails to post the mandated disclaimer.

87.     Pursuant to Maryland's Conscience Clause, Md. Code Ann., Health-General § 20-214, a "person may not be required to … refer for any medical procedure that results in … termination of pregnancy," and the refusal to provide abortion referrals "may not be a basis for civil liability to another person or disciplinary or other recriminatory action." Id.

88.     A pregnancy center may only be found in violation of the Ordinance if it refuses to provide referrals for abortion.  If a pregnancy center refers for abortion it is not subject to the Ordinance's penalties.

89.     Accordingly, the Ordinance is in direct conflict with the Conscience Clause and violates its prohibition on taking recriminatory action against a person for refusing to refer for abortions.  Enforcement of the Ordinance would violate Plaintiffs' rights under the Conscience Clause.

WHEREFORE, Plaintiffs respectfully request that the Court grant the declaratory and injunctive relief set forth herein and award such nominal damages and other relief to the Plaintiffs as are reasonable, just and necessary.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the court:

(a) Declare the Ordinance unconstitutional on its face and/or as-applied to Plaintiffs;

(b) Enter preliminary and permanent injunctions against enforcement of the Ordinance;

(c) Award Plaintiff costs of the litigation, including reasonable attorneys' fees and expenses under 42 U.S.C. § 1988; and

(d) Award any and all other relief the Court deems just and proper.

Respectfully submitted,

### Attorneys for Plaintiffs

|  |  |
|---|---|
| \_\_\_\_\_/s/   David W. Kinkopf_____ | \_\_\_\_\_/s/ Peter J. Basile_____ |
| David W. Kinkopf, Federal Bar # 23366 | Peter J. Basile, Federal Bar # 10405 |
| dkinkopf@gejlaw.com | pbasile@fsb-law.com |
| Steven G. Metzger, Federal Bar # 28492 | FERGUSON, SCHETELICH & |
| smetzger@gejlaw.com | BALLEW, P.A. |
| GALLAGHER EVELIUS & JONES LLP | 1401 Bank of America Center |
| 218 North Charles Street, Suite 400 | 100 South Charles Street |
| Baltimore, Maryland  21201 | Baltimore, MD 21201-2725 |
| (410) 727-7702 | (410) 837-2200 |

Robert Destro
Mark Rienzi
Columbus School of Law
The Catholic Univ. of America
620 Michigan Avenue, N.E.
Washington, DC 20064
(202) 319-4970
Motions for Admission *Pro Hac Vice* to be filed